## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| **M.Z. BERGER & CO.** | ) |
| | ) |
| **Appellant,** | ) |
| | ) |
| **v.** | ) |
| | ) **Appeal No. 2014-** |
| **SWATCH AG** | ) |
| **Appellee/Cross-Appellant.** | ) |
| | ) |
| <u>**Opposition No. 91187092**</u> | ) |

## <u>NOTICE FORWARDING CERTIFIED LIST</u>

A notice of appeal to the United States Court of Appeals for the Federal Circuit was timely filed on November 26, 2013, and a notice of cross-appeal to the United States Court of Appeals for the Federal Circuit was timely filed on December 9, 2013, in the United States Patent and Trademark Office in connection with the above-identified opposition proceeding. Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the United States Patent and Trademark Office (USPTO) is today forwarding, to counsel for Appellant and Appellee/Cross-Appellant, a certified list of documents comprising the record in the USPTO.

Counsel for Appellant may contact counsel for the Appellee/Cross-Appellant to arrange for designating the appendix. *See generally* Fed. Cir. Rule 30(b).

If a copy of the notice of appeal and the docketing fee of $500.00 have not been filed with the Federal Circuit, counsel is reminded that a copy of the notice and the docketing fee should be promptly filed with the Federal Circuit.

The mailing address of the Federal Circuit is:

> U.S. Court of Appeals for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, DC 20439

All papers served on the Solicitor in connection with this appeal shall deliver them as follows:

By hand:     Office of the Solicitor
             Madison West
             600 Dulany Street, Room 08C43A
             Alexandria, VA

By mail:     Office of the Solicitor
             Mail Stop 8, P.O. Box 1450
             Alexandria, VA 22313-1450

Respectfully submitted,

**Margaret A. Focarino**
Commissioner for Patents
of the United States Patent and Trademark
Office

Date: January 8, 2014              By: _Macia L. Fletcher_
                                        **Macia L. Fletcher**
                                        Paralegal Specialist
                                        Mail Stop 8, P.O. Box 1450
                                        Alexandria, Virginia 22313-1450
                                        571-272-9035



**Katten**

Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
212.940.8776 fax
www.kattenlaw.com

SAMSON HELFGOTT
samson.helfgott@kattenlaw.com
(212) 940-8683 direct
(212) 894-5683 fax

**BY HAND DELIVERY**

November 26, 2013

Office of the General Counsel
United States Patent and Trademark Office
600 Dulaney Street
Madison East 10B20
Alexandria, Virginia 22314
571-272-7000

Re:     Notice of Appeal, *Swatch AG v. M.Z. Berger & Co.*, Opp'n No. 91187092 (TTAB)

Dear Sir of Madam:

Please find enclosed an original notice of appeal of Applicant-Appellant M.Z. Berger & Co.

Copies of the enclosed notice were also filed with the United States Court of Appeals for the Federal Circuit pursuant to that Court's Local Rule 15(a)(1), and served upon counsel for the Opposer Swatch AG and the Trial and Trademark Appeal Board consistent with 37 C.F.R. § 2.145(b)(3).

Sincerely,

*Samson Helfgott* /rts

Samson Helfgott

2013 NOV 26 PM 2: 24
US PATENT AND
TRADEMARK OFFICE
OFFICE OF THE GENERAL COUNSEL

Enclosure:     Notice of Appeal

CC:     Counsel for Opposer (by First-Class Mail)
        Trademark Trial and Appeal Board (by First-Class Mail)

SH:rts

AUSTIN     CENTURY CITY     CHARLOTTE     CHICAGO     HOUSTON     IRVING     LOS ANGELES
NEW YORK     ORANGE COUNTY     SAN FRANCISCO BAY AREA     SHANGHAI     WASHINGTON, DC
LONDON: KATTEN MUCHIN ROSENMAN UK LLP
A limited liability partnership including professional corporations

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

SWATCH AG (SWATCH SA) (SWATCH LTD.),

        *Opposer,*

v.

M.Z. BERGER & CO., INC.,

        *Applicant.*

Opposition No. 91187092

Application Serial No. 77,222,620

## NOTICE OF APPEAL

Notice is given to the Director of the United States Patent and Trademark Office that Applicant M.Z. Berger & Co, Inc. hereby appeals to the United States Court of Appeals for the Federal Circuit from the Opinion and Order of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, mailed September 30, 2013, in Opposition No. 91187092 for Application Serial No. 77,222,620. A copy of the Opinion and Order is attached.

Dated: November 26, 2013

Respectfully submitted,

*Samson Helfgott / ens*

Samson Helfgott
Jessica Garrett
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
samson.helfgott@kattenlaw.com
jessica.garrett@kattenlaw.com
212-940-8800

*Counsel for Applicant*
*M.Z. Berger & Co., Inc.*

OFFICE OF THE GENERAL COUNSEL.
2013 NOV 26 PH 2: 24
US PATENT AND
TRADEMARK OFFICE



COLLEN *IP*
INTELLECTUAL PROPERTY LAW

Telephone (914) 941-5668
Facsimile (914) 941-6091
www.collenIP.com
jlindenbaum@collenip.com

December 9, 2013

**Via Express Mail (Label No. EV166625132US)**
Office of General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450
Attention: Director

Re:   Appeal of U.S. Trademark Opposition No. 91187092
      *Swatch AG v. M.Z. Berger & Co.* (Serial No. 77/222,620)
      Our Ref.: H579

Dear Director:

Enclosed please find Swatch AG's Notice of Cross-Appeal, along with a copy of the decision being appealed. Three copies of this Notice of Appeal are also being delivered to the US Court of Appeals for the Federal Circuit, along with the Federal Circuit filing fee.

Should any other fee be required, the Patent and Trademark Office is hereby requested to charge such fee to our deposit account 03-2465.

Thank you for your courtesies.

Very truly yours,

Jeffrey A. Lindenbaum

JAL/mm
Encl.  Notice of Appeal

OFFICE OF THE GENERAL COUNSEL
2013 DEC 11  PM 3:03
US PATENT AND
TRADEMARK OFFICE

PAPERCUT PROTOCOL

COLLEN IP Intellectual Property Law, P.C., THE HOLYOKE-MANHATTAN BUILDING,
80 South Highland Avenue, Ossining-on-Hudson, Westchester County, New York 10562 USA

Attorney Docket No. H579

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

Swatch AG (Swatch SA) (Swatch Ltd.),

Opposer,

v.

M.Z. Berger & Co., Inc.,

Applicant.

Mark: IWATCH
Opp. No.: 91187092
Serial No.: 77/222,620

## NOTICE OF CROSS-APPEAL

Opposer Swatch AG (Swatch SA) (Swatch Ltd.) hereby files this Notice of Cross-Appeal

to the United States Court of Appeals for the Federal Circuit. Swatch appeals the portion of the

attached September 30, 2013 decision of the Trademark Trial and Appeal Board which finds

there is no likelihood of confusion.

Respectfully submitted,

By: _____
Jeffrey A. Lindenbaum
Jess M. Collen
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining-on-Hudson, NY 10562
Tel: (914) 941-5668
Fax: (914) 941-6091
jlindenbaum@collenip.com
*Attorney for Opposer*

December 9, 2013

1

## CERTIFICATE OF FILING AND SERVICE

I, Jeffrey A. Lindenbaum, hereby certify that on December 9, 2013, the foregoing Notice of Cross-Appeal is being deposited with the United States Postal Service as Express Mail, postage prepaid, bearing Express Mail Label No. EV166625132US, addressed to the United States Patent and Trademark Office at the following address:

Office of General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450

I further certify that on December 9, 2013, three copies of this Cross-Appeal are being deposited with United States Postal Service as Express Mail, postage prepaid, bearing Express Mail Label No. EV166625146US, addressed to the U.S. Court of Appeals for the Federal Circuit at the following address:

Clerk's Office
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

I further certify that on December 9, 2013 a copy of this Cross-Appeal is being served on the below-listed Applicant's counsel of record via US Mail at the following address:

SAMSON HELFGOTT
KATTEN MUCHIN ROSENMAN LLP
575 MADISON AVENUE
NEW YORK, NY 10022

OFFICE OF THE GENERAL COUNSEL
2013 DEC 11 PM 3: 34
US PATENT AND
TRADEMARK OFFICE

2

> THIS OPINION IS A
> PRECEDENT OF THE TTAB

Hearing:                                          Mailed:
March 12, 2013                                    September 30, 2013

## UNITED STATES PATENT AND TRADEMARK OFFICE

———

### Trademark Trial and Appeal Board

———

*Swatch AG (Swatch SA) (Swatch Ltd.)*[1]
*v.*
*M. Z. Berger & Co., Inc.*

———

Opposition No. 91187092
Application Serial No. 77222620

———

Jeffrey A. Lindenbaum and Jess M. Collen of Collen IP for Opposer.

Michael F. Sarney of Katten Muchin Rosenman LLP for Applicant.

———

Before Seeherman, Kuczma, and Hightower, Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

On July 9, 2007, applicant M. Z. Berger & Co., Inc. applied to register the

mark IWATCH, in standard character form, for the following goods:

> Cases for clock and watch-making; Cases for watches and
> clocks; Clock and watch hands; Dials for clock-and-watch-
> making; Diving watches; Jewelry watches; Parts for
> watches; Pocket watches; Stop watches; Watch bands;
> Watch bands and straps; Watch boxes; Watch bracelets;

———————————

[1] Opposer is a Swiss corporation. The parentheticals are part of its name.

Opposition No. 91187092

> Watch cases; Watch chains; Watch clasps; Watch crowns;
> Watch faces; Watch fobs; Watch parts; Watch straps made
> of metal or leather or plastic; Watches; Watches
> containing a game function; Wrist watches; Alarm clocks;
> Clock dials; Clocks; Pendulum clocks; Small clocks; Table
> clocks; Wall clocks

all in International Class 14.[2]

Opposer Swatch AG (Swatch SA) (Swatch Ltd.) opposes the application on the grounds of likelihood of confusion with its registered marks SWATCH and SWATCH in stylized form, as detailed *infra*, and lack of bona fide intent to use the mark in commerce.[3] The proceeding is fully briefed, and an oral hearing was held before the Board on March 12, 2013.

### Evidentiary Issues

Applicant moves to strike from evidence an article from the magazine *Women's Wear Daily* introduced by opposer as Exhibit 19 to the Higgins Transcript[4] and also submitted as Exhibit 39 to opposer's notice of reliance. The article is titled "The WWD 100: A Women's Wear Daily Special Report, July 2008" and subtitled "The 11th annual consumer brand-awareness survey." The article explains that it includes the results of a survey conducted as follows:

---

[2] Application Serial No. 77222620, based on Trademark Act Section 1(b) (intent-to-use).

[3] We deem waived the additional grounds for opposition that opposer pled but did not argue in its brief. *See, e.g., Knight Textile Corp. v. Jones Inv. Co.*, 75 USPQ2d 1313, 1314 n.4 (TTAB 2005). We also note that the Board denied opposer's motion to amend its pleadings to add claims of mere descriptiveness and/or deceptive misdescriptiveness, and the Commissioner for Trademarks, by delegation of the Director of the United States Patent and Trademark Office, denied opposer's petition to reverse that denial. *See* Commissioner for Trademarks Decision, August 11, 2011; Board Order of August 15, 2011.

[4] Patricia Higgins is brand manager for Swatch Group (U.S.) Inc., opposer's U.S. distributor.

Opposition No. 91187092

> To assess Americans' awareness of apparel and accessories brands, WWD commissioned Synovate, a New York-based market research firm. Synovate conducted an online poll of women between the ages of 13 and 64, with minimum household incomes of $35,000. The survey yielded 2,218 responses, including 247 teens age 13 to 17, and was fielded May 1 to 9.
>
> The questionnaire contained 1,054 prelisted brands in 12 categories, like denim, designer, accessories, innerwear, sportswear, etc. Women were asked to say whether they were "very familiar," "somewhat familiar" or "not at all familiar" with each brand. The results are a straightforward ranking of brands with the highest number of "very familiar" responses. ...
>
> The results are accurate at the 95 percent confidence level and nationally projectable based on U.S. census data.[5]

In pertinent part, Opposer's SWATCH brand was listed 63rd overall[6] and fifth among watch brands.[7]

Applicant objects that the article lacks foundation and is hearsay because it reports a survey not conducted by Ms. Higgins, who is a fact witness, not an expert. Opposer acknowledges that the article was not submitted through an expert, but argues that it should be considered for what it shows on its face and not the truth of the matters asserted, like other "non-survey magazine and newspaper articles."[8]

We agree with opposer. Periodicals are considered self-authenticating pursuant to FED. R. EVID. 902(6) and may be admitted via notice of reliance

---

[5] Exhibit 19 to the Higgins Tr. and Exhibit 39 to Opposer's Notice of Reliance, at 001802.

[6] *Id.* at 001820.

[7] *Id.* at 001840. The watch brands were ranked, in order from 1 to 10, as Timex; Seiko; Fossil; Rolex; Swatch; Victorinox Swiss Army; Tiffany; Citizen; Casio; and Bulova.

[8] Opposer's opposition to applicant's motion to strike, at 1.

Opposition No. 91187092

pursuant to Section 2.122(e) of the Trademark Rules, 37 C.F.R. § 2.122(e). The article's significance lies in showing on its face that opposer's SWATCH mark is sufficiently well-known to be among the brands included. We therefore admit Exhibit 19 as a magazine article displaying evidence of the strength of the brand SWATCH (among many other such articles submitted by opposer), rather than as a scientific survey or other expert evidence.

Opposer, in turn, objects to applicant's offer in evidence of portions of the discovery depositions of applicant's own witnesses Bernard Mermelstein, owner/chief executive officer and corporate representative of applicant pursuant to FED. R. CIV. P. 30(b)(6), and Monica Titera, applicant's licensing and business affairs manager.[9] Applicant proffers the excerpts to complete the portions of those discovery depositions introduced by opposer.[10]

Trademark Rule 2.120(j)(4) states:

> If only part of a discovery deposition is submitted and made part of the record by a party, an adverse party may introduce under a notice of reliance any other part of the deposition which should in fairness be considered so as to make not misleading what was offered by the submitting party. A notice of reliance filed by an adverse party must be supported by a written statement explaining why the adverse party needs to rely upon each additional part listed in the adverse party's notice, failing which the Board, in its discretion, may refuse to consider the additional parts.

---

[9] Applicant's Notice of Reliance, Exhibits 8 and 9.

[10] Opposer's Notice of Reliance, Exhibits 17-26 (including testimony and exhibits).

4

Opposition No. 91187092

Considering first the Mermelstein testimony, which was filed under seal, we sustain opposer's objection as to pages 19:12-25 and 27:8-28:9, which introduce new testimony rather than make the excerpts offered by opposer not misleading. We overrule opposer's objection to the testimony at page 27:4-7, which clarifies the witness's preceding answer regarding store classification.

Turning to the Titera discovery deposition testimony, we overrule opposer's objection to page 41:8-23, in which the witness states that she received information verbally. Without this passage, the portion opposer introduced (pages 41:23-43:7) referencing documentation of the information may be misleading. Finally, we sustain opposer's objection to the introduction by applicant of pages 56:22-57:23 as it does not clarify or correct the testimony offered by opposer and therefore have not considered this passage.

We hasten to add, however, that consideration of the excluded testimony would not have affected the outcome herein.

Opposer also objects to the introduction by applicant of Registration No. 1613715 on the ground that it has been canceled. Opposer apparently is mistakenly referring to third-party Registration No. 1613735 for the mark EYEWATCH for "watches,"[11] which Office electronic database records reflect as a live registration. We therefore overrule opposer's objection. Applicant neither responded to opposer's motion with respect to this registration nor relied on the

---

[11] Applicant's Notice of Reliance, Exhibit 13.

Opposition No. 91187092

registration in its trial brief, and we note once again that this evidence does not affect the outcome herein.

The Record

The evidence of record automatically includes the pleadings, the file of the subject registration, and transcripts of the following testimony depositions,[12] with exhibits:

- Patricia Higgins, brand manager for Swatch (U.S.) ("Higgins Tr.");

- Monica Titera ("Titera Tr.");

- Brenda Russo, applicant's vice president of merchandising ("Russo Tr.");

- Marci Gordon, applicant's chief merchant and marketing officer ("Gordon Tr."); and

- Steven Kuritzky, applicant's vice president of business affairs and in-house counsel ("Kuritzky Tr.").

By submitting with its amended notice of opposition current printouts from the electronic database records of the U.S. Patent and Trademark Office showing the status and title of its pleaded registrations, pursuant to Trademark Rule § 2.122(d)(2), opposer made those registrations of record, as follows:

- SWATCH (in standard character form) for "watches, clocks and parts thereof"[13] and "jewelry, namely, earrings, necklaces, pendants, bracelet and rings";[14] and

---

[12] The parties' stipulation as to the filing and sealing of testimony deposition transcripts is hereby granted.

[13] Registration No. 1671076.

[14] Registration No. 2752980.

Opposition No. 91187092

- **swatch** (stylized) for "watches and parts thereof"[15] and "retail store services; namely, retail shops featuring watches, watch parts and watch accessories."[16]

Opposer also made the following evidence of record by notice of reliance:

- Opposer's Registrations:

  - No. 3554475, **eswatch** for "Precious metals and their alloys, namely, white gold, yellow gold, pink gold, jewelry watches, precious stones, namely, diamond, sapphire, ruby, emerald, horological and chronometric instruments, namely, watch cases, chronographs, chronometers for use as watches, watches, watch movements" in International Class 14; "Retail store services in the field of horlogical [sic] instruments and jewellery, on-line retail store services in the field of horlogical [sic] instruments and jewellery" in International Class 35; and "Repair and maintenance of horological products and jewellery" in International Class 37. A request for extension of protection was filed on April 7, 2008 pursuant to Section 66A of the Trademark Act and the registration issued December 30, 2008.[17]

  - No. 3567953, **iswatch** for "Precious metals and their alloys, namely, white gold, yellow gold, pink gold, jewelry watches, precious stones, namely, diamond, sapphire, ruby, emerald, horological and chronometric instruments, namely, watch cases, chronographs, chronometers for use as watches, watches, watch movements" in International Class 14; "Retail store services in the field of horological instruments and jewellery, on-line retail store services in the field of horological instruments and jewellery" in International Class 35; and "Repair and maintenance of horological products and jewellery" in International Class 37. A request for extension of protection was filed on April 7, 2008 pursuant to Section 66A of the Trademark Act and the registration issued January 27, 2009.[18]

---

[15] Registration No. 1356512.

[16] Registration No. 1799862.

[17] Opposer's Notice of Reliance, Exhibit 5.

[18] *Id.*, Exhibit 6. Opposer made no arguments in its briefs concerning the **eswatch** and **iswatch** marks.

7

Opposition No. 91187092

- Portions of applicant's responses to opposer's first and second sets of interrogatories and requests for admission;[19]

- Portions of the discovery depositions of applicant's witnesses Bernard Mermelstein ("Mermelstein Tr.") and Monica Titera ("Titera Discovery Tr."), subject to the evidentiary rulings *supra*;[20] and

- Printed publications (magazine and newspaper articles)[21] and printouts from opposer's website.[22]

Applicant made the following additional evidence of record by notice of reliance:

- The following registrations owned by applicant, all for "watches" in International Class 14 unless otherwise noted:

    o No. 3942099, I-KIDZ (registered April 5, 2011);[23]

    o No. 4119715, GALAXY (registered March 27, 2012);[24]

    o No. 3955723, JACK OF HEARTS for jewelry and watches (registered May 3, 2011);[25]

    o No. 2602318, SACHE (registered July 30, 2002);[26] and

    o No. 2673250, STUDIO TIME (registered January 7, 2003).[27, 28]

---

[19] *Id.*, Exhibits 7-16.

[20] *Id.*, Exhibits 17-26.

[21] *Id.*, Exhibits 27-62.

[22] *Id.*, Exhibit 63.

[23] Applicant's Notice of Reliance, Exhibit 1.

[24] *Id.*, Exhibit 2.

[25] *Id.*, Exhibit 3.

[26] *Id.*, Exhibit 4. This registration originally also covered clocks, which were deleted on renewal in July 2012.

[27] *Id.*, Exhibit 7.

[28] Applicant also submitted Registrations No. 2595607 for CRAZE (Exhibit 5, registered July 16, 2002) and No. 2613563 for LAX (Exhibit 6, registered August 27, 2002), both of which were cancelled in 2013, during the pendency of this proceeding.

Opposition No. 91187092

- Portions of the discovery depositions of applicant's witnesses Bernard Mermelstein and Monica Titera, subject to the rulings *supra*;[29]

- Portions of the discovery deposition of opposer's trial witness, Patricia Higgins;[30]

- Excerpts from the file history of Registration No. 3942099, owned by applicant;[31] and

- Six third-party registrations, as discussed further *infra*.[32]

As noted, some of the evidence proffered by both parties has been designated as confidential and filed under seal. We will endeavor to discuss herein only in general terms any relevant evidence that has been submitted under seal and not disclosed by the parties in the unredacted portions of their public briefs.

## The Parties

Opposer introduced its SWATCH-brand watches in the United States in the 1980s.[33] Although the numbers are designated confidential, opposer's U.S. sales and advertising figures are substantial. Opposer's flagship store in New York City's Times Square alone draws more than one million visitors per year.[34] In addition to its own extensive advertising and promotion, opposer's goods have been featured in many periodicals, including *The New York Times*, *Newsweek*, and *Popular Science*.[35]

Applicant is a family-owned business that manufactures, imports, and sells

---

[29] *Id.*, Exhibits 8-9.

[30] *Id.*, Exhibit 10.

[31] *Id.*, Exhibit 11.

[32] *Id.*, Exhibits 12-18.

[33] *See* Higgins Tr. at 20:7-22:12.

[34] *Id.* at 28:14-29:11.

[35] *Id.* at Exhibits 13-15.

9

watches, clocks, and personal care products.[36] Watches constitute the majority of its current business.[37] Applicant has been in the watch business for 60 years, sold many styles of watches, and shipped more than 20 million timepieces a year as of 2010.[38] Applicant sells watches under many different brands, some of which it licenses from others and some that it creates itself.[39]

Standing and Priority

Applicant does not dispute opposer's standing or priority in the SWATCH mark. Opposer's standing to oppose registration of applicant's mark is established by its pleaded registrations, which the record shows to be valid and subsisting, and owned by opposer. *See, e.g., Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) (party's ownership of pleaded registration establishes standing). In addition, because opposer's pleaded registrations are of record, priority is not an issue with respect to the goods and services covered by opposer's pleaded registrations. *Penguin Books Ltd. v. Eberhard*, 48 USPQ2d 1280, 1286 (TTAB 1998) (citing *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974)). There is no dispute that opposer has priority vis-à-vis applicant, which filed the involved application on an intent-to-use basis in 2007.

---

[36] Russo Tr. at 5:13-20; Opposer's Notice of Reliance, Exhibit 17 ("Mermelstein Tr.") at 15:16-16:5, 17:9-16.

[37] Gordon Tr. at 9:21-23; Mermelstein Tr. at 17:20-24.

[38] *See* Gordon Exhibit 4 and Gordon Tr. at 6:19-8:9.

[39] Russo Tr. at 7; *see also* Applicant's Notice of Reliance, Exhibits 2-7.

## Likelihood of Confusion

"We determine likelihood of confusion by focusing on . . . whether the purchasing public would mistakenly assume that the applicant's goods originate from the same source as, or are associated with, the goods in the cited registrations." *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We consider all probative facts in evidence that are relevant to the likelihood of confusion factors set forth in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). Opposer must establish that there is a likelihood of confusion by a preponderance of the evidence. *Cunningham*, 55 USPQ2d at 1848.

In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). Any one factor may control in a particular case. *In re Dixie Rests., Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997). We have considered each of the *du Pont* factors as to which the parties submitted argument or evidence. To the extent that any other *du Pont* factors for which no evidence was presented may nonetheless be applicable, we treat them as neutral.

Applicant has applied to register the mark IWATCH for watches, clocks, and parts thereof. Opposer's registered mark is SWATCH, in plain and stylized form,

Opposition No. 91187092

for goods including watches, clocks, and parts thereof; retail shops featuring watches; and jewelry.

The identification of applicant's goods is not restricted and applicant does not dispute that the goods of the parties are in part identical, giving rise to the presumption that the channels of trade and classes of purchasers are the same. *See American Lebanese Syrian Associated Charities Inc. v. Child Health Research Inst.*, 101 USPQ2d 1022, 1028 (TTAB 2011); *In re Smith & Mehaffey*, 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers."). There is no showing that the parties' customers are sophisticated, and their goods are relatively inexpensive, with applicant's watches selling for as little as $5.[40] Nor does applicant dispute the extensive evidence of fame of the SWATCH mark introduced by opposer, which we find to be sufficient to prove that the mark is famous for purposes of the likelihood of confusion analysis. Thus, based on the record evidence, we find that *du Pont* factors two (similarity of the goods), three (similarity of trade channels), four (customers and conditions of sale), and five (fame of the prior mark) weigh in opposer's favor.

Applicant introduced the following third-party registrations, all for goods consisting of or including watches:

- AWATCH[41]

---

[40] Gordon Tr. at 11:24-12:7.

[41] Registration No. 1420954.

12

Opposition No. 91187092

- MY WATCH[42]
- SKYWATCH[43]
- SHOTWACH[44]
- LE WATCH[45]
- WATCH US[46]

Applicant characterizes this evidence as relating to *du Pont* factor six – the number and nature of similar marks in use on similar goods – but acknowledges that the registrations it submitted are not evidence of use of the marks shown therein.[47] Applicant also suggests that these registrations demonstrate the suggestive or descriptive nature of the term "watch."[48]

"Watch" is not, however, merely descriptive or suggestive; it is a generic term for the parties' watches. The incorporation of this term into both parties' marks[49] is not a sufficient basis for finding likelihood of confusion. It is well-settled that descriptive or generic matter may have little or no significance in likelihood of confusion determinations, and the fact that this generic root is common to the parties' marks does not render them similar. *See Cunningham,* 55 USPQ2d at 1846

---

[42] Registration No. 1413285.

[43] Registration No. 3915041.

[44] Registration No. 3593758.

[45] Registration No. 2180402.

[46] Registration No. 2172185.

[47] *See Han Beauty, Inc. v. Alberto-Culver Co.,* 236 F.3d 1333, 57 USPQ2d 1557, 1561 (Fed. Cir. 2001); *AMF Inc. v. American Leisure Prods., Inc.,* 474 F.2d 1403, 177 USPQ 268, 269 (CCPA 1973); *In re Max Capital Group Ltd.,* 93 USPQ2d 1243, 1248 (TTAB 2010).

[48] *See* Applicant's Brief at 21.

[49] While "swatch" is a word in its own right, when it is used as a mark for watches, the presence of "watch" within "swatch" will be apparent to prospective consumers.

13

Opposition No. 91187092

("Regarding descriptive terms, this court has noted that the 'descriptive component
of a mark may be given little weight in reaching a conclusion on the likelihood of
confusion.'") (quoting *In re Nat'l Data Corp.*, 224 USPQ at 752); *In re Dixie Rests.,
Inc.*, 41 USPQ2d at 1533-34.

In determining whether there is a likelihood of confusion, we are mindful
that fame, where it exists, plays a dominant role in the likelihood of confusion
analysis because famous marks enjoy a broad scope of protection or exclusivity of
use, and we accord them extreme deference. *Bose Corp. v. QSC Audio Prods. Inc.*,
293 F.3d 1367, 63 USPQ2d 1303, 1305 (Fed. Cir. 2002); *Recot Inc. v. M.C. Becton*,
214 F.3d 1322, 54 USPQ2d 1894, 1897 (Fed. Cir. 2000).

Nonetheless, when we address the first *du Pont* factor, the similarity or
dissimilarity of the marks, we find that applicant's mark IWATCH differs
significantly from opposer's mark SWATCH in sound, meaning, and overall
commercial impression.    Opposer's mark is a distinctive, one-syllable term
beginning with the sibilant consonant blend "SW." Applicant's mark, in contrast, is
a two-syllable telescoping of the terms "I" and "WATCH" beginning with the long "I"
vowel sound.

Opposer emphasizes that applicant's mark, like its own, adds only a single
initial letter to the common root "WATCH." While this fact may lend some visual
similarity to the two marks, even the letters "I" and "S" – likely to draw attention as

14

Opposition No. 91187092

initial letters[50] – are readily distinguishable in both appearance and in meaning.
Viewed in the context of applicant's identified goods, the initial term "I" could lend
itself to a number of different consumer interpretations, including as a well-
established reference to "interactive"; a personal pronoun; or a double entendre
playing on the verb form of the term "watch." Opposer's mark SWATCH has none
of these meanings.

As will be discussed further *infra,* after receiving a descriptiveness refusal,
applicant represented during prosecution that "there will be no interactive features"
on its IWATCH products: "The 'i' does not refer to any particular feature of the
watches or clocks. The 'i' is purely arbitrary."[51] Nonetheless, applicant's owner
deemed the mark appropriate for some sort of technology or "information" watch.[52]

In sum, under the first *du Pont* factor, we find that the sound, meaning,
appearance, and overall commercial impression of the marks SWATCH and
IWATCH are sufficiently dissimilar to render confusion unlikely. *See, e.g., Bulova
Watch Co. v. Miller,* 463 F.2d 1376, 175 USPQ 38, 39 (CCPA 1972) (holding that
UNITRON and ACCUTRON for watches "just do not look alike, sound alike or
connote alike"); *Claremont Polychemical Corp. v. Atlantic Powdered Metals, Inc.,*
470 F.2d 636, 176 USPQ 207, 208 (affirming that EVERGOLD for metal powder is
unlikely to cause confusion with DURAGOLD for a bronze gold pigment for

---

[50] *See Presto Prods. Inc. v. Nice-Pak Prods. Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988) (noting
that "it is often the first part of a mark which is most likely to be impressed upon the mind
of a purchaser and remembered").

[51] May 1, 2008 response to Office action.

[52] Mermelstein Tr. at 102:16-25.

15

Opposition No. 91187092

decorative uses). *Cf. Swatch Watch, S.A. v. Taxor, Inc.*, 785 F.2d 956, 229 USPQ 391, 392 (11th Cir. 1986) (affirming denial of preliminary injunction early in opposer's history because no likelihood of confusion between SWATCH and T-WATCH for watches).

Thus, despite the *du Pont* factors that favor opposer, in this case the dissimilarity of the marks is determinative. "We know of no reason why, in a particular case, a single *du Pont* factor may not be dispositive." *Kellogg Co. v. Pack'em Enters. Inc.*, 951 F.2d 330, 21 USPQ2d 1142, 1145 (Fed. Cir. 1991); *see also Citigroup Inc. v. Capital City Bank Group Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1260 (Fed. Cir. 2011) (stating that the Board need not discuss each *du Pont* factor and may find a single factor dispositive). Opposer has submitted argument with respect to the remaining *du Pont* factors, but there is insufficient evidence to find that any of them favor opposer. Even if all remaining *du Pont* factors are weighed in favor of opposer, they would be insufficient to overcome the substantial differences between the marks SWATCH and IWATCH. Opposer's claim under Section 2(d) of the Trademark Act is therefore dismissed.

### Bona Fide Intent

Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), states that:

> A person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce may request registration of its trademark on the principal register hereby established by paying the prescribed fee and filing in the Patent and Trademark Office an application and a verified statement, in such form as may be prescribed by the Director.

16

Opposition No. 91187092

Opposer has the burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods at the time it filed its application. We note at the outset that our inquiry is not into applicant's subjective state of mind alone. Rather, evidence of circumstances bearing on intent

> is "objective" in the sense that it is evidence in the form of real life facts and by the actions of the applicant, not by the applicant's testimony as to its subjective state of mind. That is, Congress did not intend the issue to be resolved simply by an officer of applicant later testifying, "Yes, indeed, at the time we filed that application, I did truly intend to use the mark at some time in the future."

*L'Oreal S.A. v. Marcon*, 102 USPQ2d 1434, 1444 (TTAB 2012) (quoting 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 19:14 (4th ed. 2009)); *see also SmithKline Beecham Corp. v. Omnisource DDS LLC*, 97 USPQ2d 1300, 1305 (TTAB 2010); *Research In Motion Ltd. v. NBOR Corp.*, 92 USPQ2d 1926, 1931 (TTAB 2009).

Thus, as we have consistently held, our determination whether an applicant has a bona fide intention to use the mark in commerce is an objective determination, based on all the circumstances. *Boston Red Sox Baseball Club L.P. v. Sherman*, 88 USPQ2d 1581, 1587 (TTAB 2008); *see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 86 USPQ2d 1527, 1537-38 (D.C. Cir. 2008) ("Here, Congress made clear that a 'bona fide intent to use' also involves an objective standard by specifying there must be 'circumstances showing ... good faith.' Thus, an opposer may defeat a trademark application for lack of bona fide intent by proving the applicant did not actually intend to use the mark in

17

Opposition No. 91187092

commerce or by proving the circumstances at the time of filing did not demonstrate that intent.").

One way an opposer can establish its prima facie case of no bona fide intent is by proving that applicant has no documentary evidence to support its allegation in the application of its claimed bona fide intent to use the mark in commerce as of the application filing date. *Saul Zaentz Co. v. Bumb*, 95 USPQ2d 1723, 1727 (TTAB 2010). The absence of any documentary evidence regarding an applicant's bona fide intention to use a mark in commerce is sufficient to prove that an applicant lacks the intention required by Section 1(b) of the Trademark Act, unless other facts are presented which adequately explain or outweigh applicant's failure to provide such documentary evidence. *See Honda Motor Co. v. Winkelmann*, 90 USPQ2d 1660, 1662 (TTAB 2009); *L.C. Licensing Inc. v. Berman*, 86 USPQ2d 1883, 1891 (TTAB 2008). If opposer satisfies its initial burden of showing the absence of documentary evidence regarding applicant's bona fide intention to use the mark, the burden of production shifts to applicant to come forward with evidence adequately explaining or outweighing the failure to provide such documentary evidence. *See Commodore Elecs. Ltd. v. CBM Kabushiki Kaisha*, 26 USPQ2d 1503, 1507 n. 11 (TTAB 1993).

We first consider the documentary evidence relating to applicant's bona fide intention to use the IWATCH mark in commerce. The few documents of record appear to relate only to the trademark application. Beyond the application file, the

18

Opposition No. 91187092

entire universe of documentary evidence produced by applicant relating to the

IWATCH mark[53] consists of:

(1) A trademark search of Class 14 conducted by Monica Titera, the employee who handles applicant's trademark applications, four days before she filed the application on July 9, 2007.[54]

(2) An internal email dated May 2, 2008 relating Ms. Titera's discussion with the examining attorney. The email, subject "iWatch & iClock update," essentially echoes the wording of a response to an Office action submitted by Ms. Titera the previous day. The message is addressed to Mr. Mermelstein (copying in-house counsel Mr. Kuritzky and chief merchant and marketing officer Ms. Gordon) and states:

> I spoke with the Examining Atty at the PTO, and explained that the goods for the iWatch & iClock names will not have any interactive features. The images we previously submitted were just mock-ups to show a buyer. The buyer decided that models which previously had interactive features were too expensive, but was still interested in the name. Thus, there won't be any interactive features on any models.

> The Atty said this is fine, and advised that we add in our response that the "I" is purely arbitrary, and does not refer to any particular feature of the watches or clocks.

> **Bottom line:** she will withdraw her refusal, and we are moving to the next phase – publication.[55]

(3) Three internal emails forwarding pictures of three stylized versions of the IWATCH mark, as well as images of one clock and two apparently identical watches featuring the IWATCH mark.[56]

---

[53] Portions of these documents also concern applicant's application to register the mark ICLOCK, which is neither before us nor of record.

[54] Titera Tr. at 6:24-8:9 and Exhibit 6.

[55] *Id.* at 14:4-15:21 and Exhibit 9. The representation on buyer feedback is discussed *infra*.

[56] *Id.* at 9:19-14:3 and Exhibit 7; Russo Exhibit 2 and Russo Tr. at 26:11-29:14, 64:17-69:11; Opposer's Notice of Reliance, Exhibit 20.

Opposition No. 91187092

Applicant acknowledged through its testimony that it ceased any work on developing a watch in association with the IWATCH mark when the opposition proceeding began on October 22, 2008, fifteen months after the application was filed. It appears that no documents relating to the IWATCH mark other than those just listed ever existed. In its brief, applicant stated that its witnesses "testified that no records or other types of documents were created. At most, that leaves just emails which may have been exchanged."[57]

The images of the clock and watches displaying an IWATCH logo appear in the record as follows:

---

[57] Applicant's Brief at 9 n.4. We note that Marci Gordon, applicant's chief merchant and marketing officer, testified that she takes personal notes at product development meetings, but discarded all her notes for 2008 at the end of that year, two months after this proceeding commenced. *See* Gordon Tr. at 13:16-17:15, 42:6-48:9; *see also* Russo Tr. at 10:20-11:4. Given the statement in applicant's brief, we will not infer that Ms. Gordon's notes would have referenced any plans having to do with the IWATCH mark.

20

Opposition No. 91187092



Opposition No. 91187092



These images apparently were created in February 2008. In the internal emails mentioned in category 3 *supra*, the pictures were sent by applicant's creative art director to chief merchant and marketing officer Marci Gordon (who testified, however, that she did not recall seeing renderings of any IWATCH products, including these[58]) and to Ms. Titera, who asked the creative art director to resize some of the images so they were in a format acceptable for submission to the Office.[59] Shortly thereafter, in March 2008, Ms. Titera submitted the images to the

---

[58] Gordon Tr. at 48-49.

[59] *See supra* n.56; Titera Tr. at 11:5-20, Exhibit 7 and errata.

22

Opposition No. 91187092

Office in response to a request for more information about the goods identified in the application, that is, for "samples of advertisements or promotional materials for goods of the same type."[60] Ms. Titera described these submissions as "samples of promotional materials of both watches and clocks."[61]

Under our precedent, the fact that these documents were created seven months after the trademark application was filed is not dispositive. In *Lane Ltd. v. Jackson Int'l Trading Co.*, 33 USPQ2d 1351, 1355 (TTAB 1994), the Board found documentary evidence created nine to eleven months after the application was filed to be sufficiently contemporaneous evidence of intent. "Neither the statute nor the Board's decision in *Commodore Electronics* expressly imposes any specific requirement as to the contemporaneousness of an applicant's documentary evidence corroborating its claim of bona [f]ide intention. Rather, the focus is on the entirety of the circumstances, as revealed by the evidence of record." *Lane Ltd.*, 33 USPQ2d at 1356.

Applicant's witnesses disagree about what the submitted pictures represent:

- Ms. Russo testified that the images show an actual mockup of a previously developed watch prepared for an internal meeting, probably in 2007 or 2008, by printing out the IWATCH logo and putting it onto the watch. Ms. Russo testified: "Q. Do you know if these are actually mock-ups of watches and clocks? A. I believe these are actuals, yes. These are not renderings. These are actual photos."[62] Ms. Russo testified that she was not involved with the trademark application, but

---

[60] October 5, 2007 Office action.

[61] March 21, 2008 response to Office action.

[62] Russo Tr. at 64:17-68:6, 27:15-18 and Exhibit 2. Ms. Russo testified that she did not see the prototype watch before or after the meeting and did not know what happened to it. *Id.* at 66:17-67:16.

> believed that a prototype watch and clock "were prepared for internal meetings, strategy meetings. And pictures were then taken and sent for trademark. I think that's how it happened."[63]
>
> • Ms. Titera also characterized the images as mockups.[64]
>
> • In contrast, Mr. Mermelstein, applicant's CEO and 30(b)(6) witness, testified that no mockup watches were made, and these images were created "[p]ossibly, probably in relation to the application for trademarking maybe."[65] After reviewing the application later during his discovery deposition, Mr. Mermelstein testified: "Q. Okay. And you had mentioned earlier that you believe these images were created for part of a trademark application? A. I thought that they might be. Q. Does this refresh your recollection that they were? A. Yes."[66]
>
> • In the same vein, in a February 2008 email forwarding images that included the two IWATCH watches, the creative art director suggested the images are actually renderings, writing that "I will finish other renderings for clocks."[67]

Although creation of mockups and renderings is a normal part of applicant's product development process,[68] there is no physical or documentary evidence relating to any IWATCH mockups or renderings other than the "samples of promotional materials" submitted to the Office, which apparently were used only in support of the application and not for any promotional or other purpose.[69]

We note that in some cases, a trademark clearance search may be probative evidence of a bona fide intent to use. However, based on all the circumstances here,

---

[63] *Id.* at 65:12-69:4.

[64] Titera Tr. at 9:23-10:3, Exhibits 7 and 9.

[65] Mermelstein Tr. at 111-12.

[66] *Id.* at 124:23-125:5.

[67] Opposer's Notice of Reliance, Exhibit 9.

[68] Russo Tr. at 27:4-18; Gordon Tr. at 23:5-24:24, 48:10-49:11.

[69] Mermelstein Tr. at 112:16-22.

24

Opposition No. 91187092

including the timing of the creation of the only documents of record and the inconsistent evidence as to what the images submitted to the Office depict, these documents do not establish applicant's intention to use the IWATCH mark in commerce at the time the application was filed. *Cf. Research In Motion Ltd.*, 92 USPQ2d at 1931 ("If the filing and prosecution of a trademark application constituted a bona fide intent to use a mark, then in effect, lack of a bona fide intent to use would never be a ground for opposition or cancellation, since an inter partes proceeding can only be brought if the defendant has filed an application.").

We turn next to the remaining record evidence, in particular, testimony from applicant's witnesses. The goods identified in the application can be characterized as falling into three major categories: clocks; watches; and goods that may be incorporated in or related to watches and/or clocks (e.g., clock dials and watch fobs).

First, there is probative evidence that applicant did not intend to use the IWATCH mark for any kind of clocks. Mr. Mermelstein – applicant's owner, CEO, and corporate representative – testified that he did not expect the IWATCH mark to be used for clocks at the time he directed Ms. Titera to file the application.[70] Applicant argues that "Mr. Mermelstein's testimony clearly reflects that he was expressing his own understanding at the present time, not that of the company at the time the application was filed."[71] In most pertinent part, Mr. Mermelstein testified as follows: "Q. At the time you filed the application you didn't expect the

---

[70] *Id.* at 104:18-105:15.

[71] Applicant's Brief at 11.

25

Opposition No. 91187092

IWATCH mark to be used for clocks and personal care products? A. No. Correct."[72] The testimony is clear, particularly in the context that Mr. Mermelstein, applicant's owner and CEO, created the mark and instructed Ms. Titera to file the application. Moreover, as applicant's sole designated 30(b)(6) witness, Mr. Mermelstein was testifying on behalf of the company as its corporate representative. Thus, we treat this testimony as representing the views of the company at the time the application was filed.

Second, the evidence indicates that applicant did not have a bona fide intent to use the IWATCH mark on subsidiary goods.[73] Ms. Titera testified that Mr. Mermelstein instructed her to apply to register the IWATCH mark only for watches and clocks.[74] Instead, she included more than 30 goods in the application "to leave all doors open."[75] Although Ms. Titera testified that this was applicant's standard list of goods for trademark applications, we do not find that inclusion of the subsidiary goods in the face of Mr. Mermelstein's instructions to register the mark only for watches and clocks represents bona fide intent on applicant's part.

---

[72] Mermelstein Tr. at 105:11-15.

[73] We continue with an analysis as to the other goods identified in the application because we deem the documentary evidence of record here – in particular, the trademark search – to relate to all identified goods. We therefore consider applicant's alleged lack of a bona fide intention to use the mark with respect to all identified goods, based on an objective analysis of the entirety of the circumstances. *Cf. Spirits Int'l, B.V. v. S.S. Taris Zeytin Ve Zeytinyagi Tarim Satis Kooperatifleri Birligi*, 99 USPQ2d 1545 (TTAB 2011).

[74] Titera Discovery Tr. at 47:14-48:7.

[75] *Id.* at 53:11-15; *see also id.* at 48:14-56:4.

Opposition No. 91187092

Moreover, no other applications or registrations of record include this "standard" list.[76]

Watches, the remaining category of goods, present a closer issue.[77] Applicant's witnesses testified that they held internal brainstorming sessions and merchandising meetings regarding what applicant might do with the IWATCH mark.[78] The only evidence beyond such internal meetings relates to a conversation with a buyer, and that evidence is both vague and conflicting, as we now review in detail.

As noted, after receiving a descriptiveness refusal, applicant represented to the Office that its IWATCH products would have no interactive features. In a May 2008 response to an Office action, Ms. Titera stated that "a buyer liked the IWATCH name but deemed the models with interactive features to be too expensive."[79] Opposer asked about this representation in an interrogatory:

> INTERROGATORY NO. 35: Identify all third parties (including, but not limited to, "the buyer" referenced in Applicant's May 1, 2008 Response to Office Action) with whom Applicant's employees/agents discussed the development and/or purchase of products bearing Applicant's Mark.
>
> ANSWER: Applicant's officers and employees have no specific recollection of which third party or parties they

---

[76] *See id.*; Applicant's Notice of Reliance Exhibits 1-7, 11.

[77] In addition to "watches," the application identifies the following specific types of watches: "Diving watches; Jewelry watches; Pocket watches; Stop watches; Watches containing a game function; Wrist watches."

[78] *See* Gordon Tr. at 17:16-19:12, 38:5-44:25, 50:13-51:23; Russo Tr. at 9:17-16:3; Kuritzky Tr. at 5:20-11:12.

[79] May 1, 2008 response to Office action.

> discussed the IWATCH mark with, or which buyer is
> referred to in the Response to Office Action, as the events
> took place almost four years ago, and Applicant's sales
> personnel routinely meet with many different buyers and
> potential customers on a daily basis, either at Applicant's
> offices or at the offices of customers and potential
> customers, and they do not always keep records of such
> meetings, the dates on which they take place, or the
> locations at which they take place.  Further, many such
> meetings are informal and include discussions about a
> variety of potential brands and products.[80]

Ms. Titera testified that the representation to the Office regarding buyer feedback was based on "discussions that we had at the time."[81] This testimony is contradicted by the only witness who testified that she discussed the IWATCH mark with a buyer.   Ms. Russo, applicant's vice president of merchandising, testified that she believed she had a perhaps three-minute conversation with a buyer about the IWATCH mark, although she could remember little about the meeting – even the year it occurred – except that the buyer was a woman, the discussion likely took place in applicant's showroom, and a retail price of an IWATCH watch was discussed as being under a specific, relatively modest dollar amount (designated confidential and not disclosed in the parties' public briefs).[82] Ms. Russo further testified that she mentioned certain "techy features" that the watch had to have[83] – features that can be characterized fairly as interactive.  When

---

[80] Opposer's Notice of Reliance Exhibit 11, Applicant's Response to Opposer's Interrogatory No. 35.

[81] Titera Tr. at 14:9-15:21; *see also* Titera Discovery Tr. at 41:3-23.

[82] Russo Tr. at 25:15-29:15, 54:7-67:16, 72:11-16.

[83] *Id.* at 58:8-15 (designated as confidential).

Opposition No. 91187092

asked whether development of an IWATCH watch did not go forward because
buyers thought the watch would be too expensive, Ms. Russo answered "no."[84]

Mr. Mermelstein, on the other hand, testified that no certain kinds of
watches or features were intended to be sold under the IWATCH mark, and indeed
that the mark was never discussed outside of applicant's office at all, except with
counsel in the opposition proceeding.[85]

In other cases, Ms. Titera's statement to the Office might have carried more
weight.    Here, however, its substance is directly contradicted both by
Mr. Mermelstein, applicant's CEO and 30(b)(6) witness, and by Ms. Russo, a
witness with firsthand knowledge.    We do not view this particular evidence
regarding a discussion with a buyer as a circumstance demonstrating applicant's
bona fide intent to use the IWATCH mark at the time it filed the application.

Mr. Mermelstein, moreover, testified that he created the IWATCH mark
"because of the advent of technology and information gathering around the globe
over the last I guess few years, I thought that *if* we decided to do a – either a
technology watch or information watch or something that would have that type of
characteristics that [IWATCH] would be a good mark for it." (emphasis added).[86] As
Steven Kuritzky, vice president of business affairs and in-house counsel, testified,
Mr. Mermelstein

---

[84] *Id.* at 71:11-72:7.

[85] Mermelstein Tr. at 103:11-107:2, 112:16-113:20.

[86] *Id.* at 102:16-25 (emphasis added); *see also id.* at 103-06, 116-17.

Opposition No. 91187092

> threw it out saying, you know, I'm going to apply for the
> iWatch name, the trademark, let's discuss some things
> that we can do with it, how to use it as a brand, whether
> it would be a high-tech watch, what would the logo look
> like, how should we position this in the market, and there
> were ideas on how we might do that.[87]

Applicant's witnesses testified that they had not previously made any watch with technological features and would have had to outsource development of the IWATCH "smart watch" product.[88] But applicant's witnesses testified that they never took any step toward developing any such features, contemporaneous with filing the application or afterward. This testimony is consistent with the paucity of documentary evidence and supports a finding that applicant lacked a bona fide intent to use the IWATCH mark in commerce. We recognize that the application is not restricted to watches that are "interactive" or have high-tech features. However, the evidence shows that applicant's idea was to use the IWATCH mark only in association with a "smart" watch, incorporating technological features that applicant had never offered and made no plans to even begin developing or sourcing at any time before or in the fifteen months after it filed its application and before this opposition was brought.

Applicant argues that its intent to use the IWATCH mark is corroborated by its use of the mark I-KIDZ, which it has registered for watches.[89] Applicant does not argue, and there is no evidence, that its I-KIDZ watches incorporate any of the

---

[87] Kuritzky Tr. at 7:14-23.

[88] Gordon Tr. at 18-19; Russo Tr. at 27:25-28:6.

[89] Applicant's Notice of Reliance, Exhibit 1.

technology features for which it assertedly had the idea to use the IWATCH mark. Moreover, the I-KIDZ application was not filed until April 9, 2010 – nearly three years after the IWATCH application was filed in July 2007. Applicant also offered testimony in 2012 that it was in development to market a watch under the mark iMove.[90] Because we must consider applicant's intent at the time the application was filed, these subsequent efforts do not establish intent to use the different mark IWATCH several years earlier. *See Boston Red Sox Baseball Club L.P.*, 88 USPQ2d at 1587 (characterizing actions taken two years and four months afterward as "not even remotely contemporaneous with the filing of the application"). The circumstances here are thus readily distinguishable from the contingent situations contemplated in the legislative history of the amendment of the Trademark Act to create the intent-to-use filing system: "An applicant's bona fide intention to use a mark must reflect an intention that is firm, though it may be contingent on the outcome of an event (that is, market research or product testing)."[91]

In our analysis of whether applicant had the requisite intent-to-use, we have considered the fact that applicant has long been in the business of making and selling watches and clocks. The Board has repeatedly found a lack of bona fide

---

[90] Applicant's Brief at 2 and 13 n.7 (citing Gordon Tr. at 8-9, 64 and 67).

[91] S. Rep. No. 100-515, at 24 (1988), *reprinted in* USTA, "THE TRADEMARK LAW REVISION ACT OF 1988" 176 (1989) ("USTA"). The Senate Judiciary Committee Report analysis of the Act also observes that: "Bona fide intent is measured by objective factors. A statement of intent to use a mark on specifically identified products in the future may be sufficient. An applicant may safely make this statement in its original application without having taken concrete steps to create and introduce a new product, provided that in fact it intends to use the mark. However, other circumstances may cast doubt on the bona fide nature of the intent or even disprove it entirely." *Id.* at 23, *reprinted in* USTA at 175.

Opposition No. 91187092

intent to use a mark by individuals who lack the demonstrated capacity to produce the goods identified in the application. *See, e.g., L'Oreal S.A.*, 102 USPQ2d 1434; *Saul Zaentz Co.*, 95 USPQ2d 1723; *Boston Red Sox Baseball Club L.P.*, 88 USPQ2d at 1581. Conversely, we have previously stated, and hereby reaffirm, that an applicant's capacity to market and/or manufacture the identified goods is evidence that weighs against a finding that an applicant lacked bona fide intent to use. *See Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 USPQ2d 1629, 1643 (TTAB 2007). Each case, however, must be decided through an objective determination based on all the circumstances of record. Here, the record contains (1) applicant's testimony that it actually did not intend to use the IWATCH mark for clocks when the application was filed; (2) testimony indicating that applicant lacked an intent to use the mark on the identified subsidiary goods; and (3) contradictory testimony regarding applicant's effort to develop and market an IWATCH-brand watch.

We have carefully considered all of the parties' arguments and evidence in the record, even if not specifically discussed herein. We find, based on the record before us, that applicant's intent at the time it filed its application was "merely to reserve a right in a mark" in case it made the firm decision to begin developing an associated product at some future time, rather than to use that mark in commerce as defined in Section 45 of the Trademark Act on the identified goods. As we have previously held, mere intent to reserve rights in a mark does not equate to bona fide intent to use a mark. *See, e.g., Saul Zaentz Co.*, 95 USPQ2d at 1726-27; *cf. Research In Motion Ltd.*, 92 USPQ2d at 1931 (finding the fact that applicant's chief executive

32

Opposition No. 91187092

officer "believed BLACK MAIL to be a good mark for future use does not establish a bona fide intent to use"). Viewing all circumstances objectively, we cannot conclude that applicant's actions reveal a bona fide intention to eventually use the mark in a real and legitimate commercial sense on any of the identified goods at the time it filed the application.    Therefore, we find that opposer has established, by a preponderance of the evidence, that applicant lacked a bona fide intent to use the mark IWATCH at the time it filed its application.

*Decision:*  We dismiss the opposition on the ground of likelihood of confusion and sustain the opposition solely under Trademark Act Section 1(b).

33

## CERTIFICATE OF SERVICE

I, Jessica Garrett, hereby certify that, on this 26th day of November, 2013, I caused to be served a true and correct copy of Applicant's Notice of Appeal by First-Class Mail on:

Jeffrey A. Lindenbaum, Esq.
Jess M. Collen, Esq.
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562

*Counsel for Opposer*
*Swatch AG (Swatch SA) (Swatch Ltd.)*

Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451
571-272-8500

Jessica Garrett

Jessica Garrett

*Counsel for Applicant*
*M.Z. Berger & Co., Inc.*

OFFICE OF THE GENERAL COUNSEL
2013 NOV 26 PM 2: 24
US PATENT AND
TRADEMARK OFFICE

Form PTO 55 (12-80)

## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

January 8, 2014
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries

in the file of the trademark opposition proceeding and involved application identified

below. The list was taken from the TTABvue and TSDR electronic databases of this

Office and comprises the record before the United States Patent and Trademark Office.

**Swatch AG v. M.Z. Berger & Co.**

**Opposition No. 91187092**

**(Application No. 77/222,620)**



By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Maried Fletcher*
*Certifying Officer*

## PROSECUTION HISTORY – OPPOSITION NO. 91187092
### (Serial No. 77/222,620)

| DATE | DESCRIPTION |
|------|-------------|
| 07/05/2007 | APPLICATION |
| 07/05/2007 | DRAWING |
| 07/10/2007 | NOTICE OF PSEUDO MARK |
| 10/04/2007 | XSEARCH SUMMARY |
| 10/05/2007 | NON-FINAL OFFICE ACTION |
| 02/22/2008 | RESPONSE TO NON-FINAL OFFICE ACTION |
| 02/23/2008 | AMENDMENT AND MAIL PROCESS COMPLETE |
| 03/21/2008 | RESPONSE TO NON-FINAL OFFICE ACTION |
| 03/22/2008 | AMENDMENT AND MAIL PROCESS COMPLETE |
| 04/18/2008 | NON-FINAL OFFICE ACTION |
| 05/01/2008 | RESPONSE TO OFFICE ACTION |
| 05/02/2008 | AMENDMENT AND MAIL PROCESS COMPLETE |
| 05/22/2008 | TRAM SNAPSHOT OF APPLICATION AT PUBLICATION FOR OPPOSITION |
| 05/22/2008 | PUBLICATION & ISSUE REVIEW COMPLETE |
| 06/04/2008 | NOTICE OF PUBLICATION |
| 10/22/2008 | NOTICE OF OPPOSITION |
| 10/22/2008 | OPPOSITION PENDING, INSTITUTED |
| 10/22/2008 | NOTICE AND TRIAL DATES SENT; ANSWER DUE |
| 11/20/2008 | ANSWER TO NOTICE OF OPPOSITION |
| 06/02/2009 | MOTION FOR SUSPENSION FOR SETTLEMENT WITH CONSENT |
| 06/02/2009 | MOTION TO SUSPEND GRANTED |
| 06/29/2009 | MOTION FOR AN EXTENSION OF ANSWER OR DISCOVERY OR TRIAL PERIODS WITH CONSENT |
| 06/29/2009 | EXTENSION OF TIME GRANTED |
| 08/26/2009 | MOTION FOR SUSPENSION FOR SETTLEMENT WITH CONSENT |
| 08/26/2009 | MOTION TO SUSPEND GRANTED |
| 09/22/2009 | MOTION FOR AN EXTENSION OF ANSWER OR DISCOVERY OR TRIAL PERIODS WITH CONSENT |
| 09/22/2009 | EXTENSION OF TIME GRANTED |
| 10/26/2009 | MOTION FOR AN EXTENSION OF ANSWER OR DISCOVERY OR TRIAL PERIODS WITH CONSENT |
| 10/26/2009 | EXTENSION OF TIME GRANTED |

| 11/24/2009 | MOTION FOR SUSPENSION FOR SETTLEMENT WITH CONSENT |
|---|---|
| 11/24/2009 | MOTION TO SUSPEND GRANTED |
| 12/24/2009 | MOTION FOR AN EXTENSION OF ANSWER OR DISCOVERY OR TRIAL PERIODS WITH CONSENT |
| 12/24/2009 | EXTENSION OF TIME GRANTED |
| 01/22/2010 | MOTION FOR EXTENSION OF DISCOVERY AND TESTIMONY PERIODS WITH CONSENT |
| 01/26/2010 | SUSPENDED |
| 04/30/2010 | P'S MOTION TO RESUME PROCEEDINGS |
| 05/03/2010 | D'S OPPOSITION IN PART TO P'S MOTION TO RESUME PROCEEDINGS |
| 05/07/2010 | P'S REPLY IN SUPORT OF ITS MOTION TO RESUME PROCEEDINGS |
| 05/07/2010 | P'S REPLY IN SUPORT OF ITS MOTION TO RESUME PROCEEDINGS (CONFIDENTIAL) |
| 08/02/2010 | BOARD'S ORDER RE TELEPHONE CONFERENCE; TRIAL DATES RESET |
| 08/03/2010 | P'S MOTION FOR LEAVE TO FILE AN AMENDED NOTICE OF OPPOSITION |
| 08/03/2010 | P'S AMENDED NOTICE OF OPPOSITION |
| 08/03/2010 | P'S CONFIDENTIAL MOTION FOR LEAVE TO FILE AMENDED NOTICE OF OPPOSITION |
| 08/21/2010 | D'S OPPOSITION TO P'S MOTION FOR LEAVE TO FILE AN AMENDED NOTICE OF OPPOSITION |
| 08/23/2010 | PROCEEDINGS SUSPENDED PENDING DISPOSITION OF OUTSTANDING MOTION |
| 09/10/2010 | P'S REPLY IN SUPPORT OF P'S MOTION FOR LEAVE TO FILE AN AMENDED NOTICE OF OPPOSITION |
| 09/29/2010 | P'S MOTION TO AMEND PLEADING GRANTED IN PART, DENIED IN PART; TRIAL DATES RESET |
| 10/19/2010 | P'S AMENDED MOTION OF OPPOSITION |
| 10/29/2010 | CONFIDENTIAL P'S PETITION TO THE DIRECTOR |
| 10/29/2010 | CONFIDENTIAL EXHIBITS TO P'S CONFIDENTIAL PETITION |
| 10/29/2010 | P'S PETITION PURSUANT TO 37 C.F.R. § 2.146 AND INCORPORATED MEMORANDUM OF LAW FOR REVIEW OF THE BOARD'S SEPTEMBER 29TH ORDER |
| 10/29/2010 | EXHIBITS TO P'S PETITION TO THE DIRECTOR |
| 10/29/2010 | CONFIDENTIAL D'S OPPOSITION TO P'S MOTION FOR LEAVE TO FILE AMENDED NOTICE OF OPPOSITION |

| 11/05/2010 | PROCEEDINGS SUSPENDED PENDING DISPOSITION OF OUTSTANDING MOTION |
|---|---|
| 11/18/2010 | D'S RESPONSE TO P'S PETITION PURSUANT TO 37 C.F.R. § 2.146 AND INCORPORATED MEMORANDUM OF LAW FOR REVIEW OF THE BOARD'S SEPTEMBER 29TH ORDER |
| 12/08/2010 | P'S REPLY IN SUPPORT OF P'S PETITION PURSUANT TO 37 C.F.R. § 2.146 AND INCORPORATED MEMORANDUM OF LAW FOR REVIEW OF THE BOARD'S SEPTEMBER 29TH ORDER |
| 12/08/2010 | NOTATION TO FILE |
| 12/23/2010 | D'S OBJECTION TO P'S REPLY IN SUPPORT OF P'S PETITION PURSUANT TO 37 C.F.R. § 2.146 AND INCORPORATED MEMORANDUM OF LAW FOR REVIEW OF THE BOARD'S SEPTEMBER 29TH ORDER |
| 07/01/2011 | BOARD COMMUNICATION – SUSPENSION MAINTAINED |
| 08/11/2011 | DIRECTOR'S DECISION: DENIED |
| 08/15/2011 | BOARD ORDER; PROCEEDINGS RESUMED; TRIAL DATES RESET |
| 08/17/2011 | DIRECTOR'S DECISION: DENIED (DUPLICATE) |
| 09/06/2011 | ANSWER |
| 12/01/2011 | MOTION FOR AN EXTENSION OF ANSWER OR DISCOVERY OR TRIAL PERIODS WITH CONSENT |
| 12/01/2011 | EXTENSION OF TIME GRANTED |
| 02/25/2012 | P'S NOTICE OF RELIANCE |
| 02/25/2012 | EXHIBITS TO P'S NOTICE OF RELIANCE CONFIDENTIAL |
| 04/27/2012 | D'S NOTICE OF RELIANCE |
| 04/27/2012 | CONFIDENTIAL D'S NOTICE OF RELIANCE |
| 06/14/2012 | STIPULATION AS TO FILING AND SEALING OF TESTIMONY DEPOSITION |
| 07/09/2012 | TESTIMONY FOR PLAINTIFF |
| 07/25/2012 | TESTIMONY FOR PLAINTIFF |
| 08/08/2012 | FIRST CONSENTED MOTION FOR EXTENSION OF TIME TO FILE TRIAL BRIEF |
| 08/08/2012 | EXTENSION OF TIME GRANTED |
| 08/08/2012 | CHANGE OF CORRESPONDENCE ADDRESS |
| 08/24/2012 | CONFIDENTIAL BRIEF ON MERITS FOR PLAINTIFF |
| 08/24/2012 | P'S (NON-CONFIDENTIAL) TRIAL BRIEF |
| 09/12/2012 | D'S NOTICE OF FILING OF TESTIMONY OF BRENDA RUSSO |
| 10/03/2012 | D'S NOTICE OF FILING OF TESTIMONY OF MARCI GORDON |
| 10/03/2012 | CONFIDENTIAL TESTIMONY FOR DEFENDANT |

| | |
|---|---|
| 10/03/2012 | TESTIMONY FOR DEFENDANT |
| 10/04/2012 | CONFIDENTIAL TESTIMONY FOR DEFENDANT |
| 10/05/2012 | D'S NOTICE OF FILING OF TESTIMONY OF MONICA TITERA |
| 10/05/2012 | D'S NOTICE OF FILING OF TESTIMONY OF STEVEN KURITZKY |
| 10/09/2012 | D'S OBJECTION TO P'S EXHIBIT 19 TO HIGGINS TRIAL TRANSCRIPT |
| 10/09/2012 | D'S TRIAL BRIEF |
| 10/16/2012 | BOARD ORDER |
| 10/23/2012 | P'S REBUTTAL BRIEF |
| 10/25/2012 | D'S REQUEST FOR ORAL ARGUMENT |
| 10/28/2012 | P'S OPPOSITION TO D'S MOTION TO STRIKE EXHIBIT 19 TO HIGGINS TRIAL TRANSCRIPT |
| 10/31/2012 | P'S REQUEST FOR ORAL ARGUMENT |
| 02/19/2013 | ORAL HEARING SCHEDULED |
| 03/12/2013 | ORAL HEARING APPEARANCE RECORD |
| 09/12/2013 | D'S CHANGE OF CORRESPONDENCE ADDRESS |
| 09/30/2013 | BOARD DECISION: SUSTAINED |
| 11/26/2013 | APPEAL TO CAFC |
| 12/02/2013 | APPEAL TO CAFC (TTAB COPY) |
| 12/11/2013 | CROSS APPEAL TO THE CAFC |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing NOTICE FORWARDING CERTIFIED LIST has been served on counsel for the Appellant and the Appellee/Cross-Appellant this 8th day of January, 2014 as follows:

>Samson Helfgott
>Jessica Garrett
>KATTEN MUCHIN ROSENMAN LLP
>575 Madison Avenue
>New York, NY 10022
>*Attorneys for Appellant*
>
>Jeffrey A. Lindenbaum
>Collen IP Intellectual Property Law, P.C.
>The Holyoke-Manhattan Building
>80 South Highland Avenue
>Ossining-on-Hudson, NY 10562

By: **Macia L. Fletcher**
Paralegal Specialist

RECEIPT FOR PAYMENT

# United States Court of Appeals
# For The Federal Circuit

OFFICE OF THE CLERK

Received From _Katten Muchin Rosenman_ (NAME)

_M.Z. Berger & Co. v Swatch AG_ (ADDRESS)

12/3/13 (DATE)

## NON-APPROPRIATED ACCOUNT

| | AMOUNT |
|---|---|
| Admission Fee | 450 00 |
| | |
| | |
| | |
| Duplicate Cert. of Admission | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL | 450 00 |

Clerk ☐

Deputy Clerk ☑

☐    Cash ☐    Check ☑    MONEY ORDER ☐

27330

**ORIGINAL**

**RECEIPT FOR PAYMENT**

# United States Court of Appeals
# For The Federal Circuit

OFFICE OF THE CLERK

Received From ___Collen IP___

(NAME)

_Swatch AG_

(ADDRESS)

_M. 2-Berger Co._          12/4/13

(DATE)

## NON-APPROPRIATED ACCOUNT

| | AMOUNT |
|---|---|
| Admission Fee | |
| _filing fee_ | 500 00 |
| | |
| Duplicate Cert. of Admission | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| | | | | |
|---|---|---|---|---|
| Clerk ☐ | | | TOTAL | 500 00 |
| Deputy Clerk ☑ _JB_ | | | | |
| ☐ | | Cash ☐  Check ☑ | MONEY ORDER ☐ | |

27358